IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:09MJ247 |
| | ) | |
| WILLIAM MICHAEL KING, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STATEMENT OF FACTS

The United States of America and the defendant, WILLIAM MICHAEL KING, agree that

had this matter proceeded to trial, the United States would have proven beyond a reasonable

doubt the following facts:

1.     In or around October 2006, in the Eastern District of Virginia and elsewhere,

within the special maritime and territorial jurisdiction of the United States, on the grounds of a

U.S. military reservation commonly known as "the Pentagon," defendant WILLIAM MICHAEL

KING, did knowingly commit simple assault, namely by making, holding, and displaying a noose

and by placing a noose around the neck of CS.

2.     In or around October 2006, in the Eastern District of Virginia, defendant

WILLIAM MICHAEL KING, by force and threats of force, did willfully intimidate and interfere

with CS, in order to intimidate CS from participating in and enjoying any benefit, service,

privilege, program, facility, and activity provided and administrated by the United States.

3.     In fall 2006, defendant WILLIAM MICHAEL KING was a truck driver for

Ferguson Trucking Company and periodically delivered materials to the Pentagon in Arlington,

Virginia, which is within the special maritime and territorial jurisdiction of the United States.

4.      In fall 2006, the United States Department of Defense contracted with and employed National Fire Protection, LLC ("NFP") to install a fire suppression system in the Pentagon. NFP, in turn, employed a pipe fitter, CS, who is a black man, to work on the Pentagon project.

5.      Directly and indirectly, in conjunction with his employment at the Pentagon, CS enjoyed certain benefits, services, privileges, programs, and facilities provided and administered by the United States, including his employment pursuant to a contract administered by the Department of Defense and the use of a Department of Defense dining facility, infirmary, and medical care provided and administered by the United States.

6.      In October 2006, defendant WILLIAM MICHAEL KING made a delivery to the Pentagon, and CS and an NFP foreman assisted in unloading the materials from the defendant's truck.

7.      Defendant WILLIAM MICHAEL KING constructed a noose from nylon rope and, after an NFP foreman intentionally bumped or pushed CS towards defendant WILLIAM MICHAEL KING, defendant WILLIAM MICHAEL KING placed the noose around CS's neck, tightened the noose, and pulled CS into a storage trailer commonly known as a connex. Defendant WILLIAM MICHAEL KING then said to CS something to the effect of: "This is what we do to coons where I come from." CS fell to the ground.

8.      When asked by a special agent: "Do you remember this incident?," defendant WILLIAM MICHAEL KING responded: "I remember making a noose, but I don't remember putting it around his neck, we always did a lot of joking around about where we was all from."

2

He also admitted that he had joked about hanging black people and admitted that he "grabbed" someone. But later in the interview, when he was again asked about the noose, defendant WILLIAM MICHAEL KING stated: "I'm 100% sure I didn't put it around anyone."

9. The actions of the defendant as recounted above were in all respects performed willfully and knowingly, they constitute Assault under Title 18, United States Code, Section 113(a)(5) and Violation of Civil Rights under Title 18, United States Code, Section 245(b)(1)(B), and these actions were not taken by mistake of law or fact, by accident, or for any other innocent reason.

Respectfully submitted,

DANA J. BOENTE
Acting United States Attorney

Jonathan L. Fahey
Assistant United States Attorney

Michael J. Frank
Trial Attorney
U.S. Department of Justice

After consulting with my attorney, David B. Deitch, and pursuant to the plea agreement entered this day between the defendant William Michael King, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded

3

to trial, the United States would have proved the same beyond a reasonable doubt, except that I do not admit that I placed a noose around CS's neck.


Dated: 24 April 09

William Michael King
Defendant


I am William Michael King's attorney. I have carefully reviewed the above Statement of Facts with William Michael King. To my knowledge, his decision to stipulate to thee facts is an informed and voluntary one.


Dated: 24 April 2009

David B. Deitch
Counsel for William Michael King


4