IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO. 1:09MJ247 |
| | ) | |
| v. | ) | Honorable Ivan D. Davis |
| | ) | |
| WILLIAM MICHAEL KING | ) | Sentencing July 10, 2009 |
| | ) | |

**RESPONSE OF THE UNITED STATES
TO DEFENDANT'S SENTENCING MEMORANDA**

The United States of America, by and through undersigned counsel, submits the following Response to the Defendant's Sentencing Memorandum and the Defendant's Supplemental Sentencing Memorandum. Position with Respect to Sentencing of WILLIAM MICHAEL KING ("the defendant"). As indicated in the Position of the United States with Respect to Sentencing, the 12 to 18 months of incarceration suggested by the Sentencing Guidelines is an appropriate sentence for the defendant.[1]

**A.    U.S. Probation Correctly Calculated the Base Offense Level to be 12**

Under U.S.S.G. § 2H1.1(a)(2), U.S. Probation correctly calculated the defendant's base offense level to be 12. The defendant argues (incorrectly) that the Base Offense Level should be only be 10 because, he contends, he was the only participant in his crimes. Defendant's Sentencing Memorandum at 12.

The Commentary to section 2H1.1 notes that the term "participant" is defined in the Commentary to § 3B1.1." Under U.S.S.G. § 3B1.1, a "participant' is a person who is criminally

---

[1] Because the defendant pled guilty to one Class A misdemeanor and one Class B misdemeanor, this Court may impose a total maximum term of incarceration of 18 months.

responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 Application Note 1; *United States v. Fells*, 920 F.2d 1179, 1182 (4th Cir. 1990); *United States v. Freeman*, 30 F.3d 1040, 1042 (8th Cir.1994) (persons who were not indicted or tried, but who were nonetheless criminally responsible for defendant's crime, were "participants" under § 3B1.1).[2] A person is criminally responsible under § 3B1.1 if he commits "'all of the elements of a statutory crime with the requisite mens rea.'" *United States v. McCoy*, 242 F.3d 399, 410 (D.C. Cir. 2001) (quoting *United States v. Bapack*, 129 F.3d 1320, 1325 (D.C. Cir. 1997).

Importantly, a person may be a "participant" even though he was not culpable in the same crime of which the supervising defendant was convicted . . . ." *United States v. Brodie*, 524 F.3d 259, 271 (D.C. Cir. 2008). Just "'as a party who knowingly assists a criminal enterprise is criminally responsible under principles of accessory liability, a party who gives knowing aid in some part of the criminal enterprise is a criminally responsible party under the Guidelines.'" *Brodie*, 524 F.3d at 271 (quoting *Bapack*, 129 F.3d at 1325).

Here, the defendant was convicted, upon a guilty plea, of two offenses: Assault, in violation of 18 U.S.C. § 113(a)5; and Violation of Civil Rights, in violation of 18 U.S.C. § 245(b)(1)(B). Another individual (described as an NFP foreman in the Statement of Facts) participated in both crimes. To find that the foreman who shoved or bumped the victim to

---

[2] The Fourth Circuit and every other Court of Appeals that has addressed the issue has held that, for purposes of U.S.S.G. § 3B1.1, the defendant himself should be counted as a "participant" when calculating the number of participants involved in a criminal venture. *United States v. Stone*, 85 Fed. Appx. 925, 939 (4th Cir. 2004); *United States v. Fells*, 920 F.2d 1179, 1182 (4th Cir. 1990); *see United States v. Gerstein*, 104 F.3d 973, 979 (7th Cir. 1997); *United States v. Rostoff*, 53 F.3d 398, 413 n.14 (1st Cir. 1995); *United States v. Gadison*, 8 F.3d 186, 195 (5th Cir. 1993); *United States v. Kenyon*, 7 F.3d 783, 785-86 (8th Cir. 1993).

prevent his escape—was a "participant," the Court must find by a preponderance of the evidence that the foreman committed all of the statutory elements of 18 U.S.C. § 113(a)(5) or 18 U.S.C. § 245(b)(1)(B).

    **1.**    **The Foreman was a Participant in the Assault**

To establish that the foreman was a participant in the Assault, the Court must find by a preponderance of the evidence three elements (via alternative means):

| | |
|---|---|
| <u>First</u> | The foreman touched or attempted to touch the victim; |
| <u>Second</u> | The foreman willfully or intentionally attempted battery; or knowingly or recklessly committed an act that would place a reasonable person in fear of injury;[3] and |
| <u>Third</u> | The foreman's actions took place within the special maritime and territorial jurisdiction of the United States. |

*Ladner v. United States*, 358 U.S. 169, 177, 79 S. Ct. 209, 213, 3 L. Ed. 2d 199 (1958) (construing the former 18 U.S.C. § 254); *United States v. Lewellyn*, 481 F.3d 695, 697 (9th Cir. 2007); *United States v. Francisco-Guiterrez*, 249 Fed. Appx. 135, 143 (11th Cir. 2007) (construing 18 U.S.C. § 113(a)(6)); *United States v. Pettigrew*, 468 F.3d 626, 639 (10th Cir.

---

[3] There are two alternative mens rea requirements because there are alternative ways to commit simple assault. *United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir. 1976) (noting that the federal assault statute contains two different types of assault actionable at common law: attempted battery and placing another in fear or apprehension of bodily injury). The "attempted battery" type of assault, like any attempt crime, requires specific intent. See, e.g., *United States v. Lewellyn*, 481 F.3d 695, 697 (9th Cir. 2007) ("The mens rea requirement is that the volitional act be willful or intentional"); *United States v. Skeet*, 665 F.2d 983, 986 (9th Cir. 1982) (government must show "a willful attempt to inflict injury"); *Dupree*, 544 F.2d at 1051 (stating that assault is committed by "a willful attempt to inflict injury upon the person of another"). The "fear or apprehension" type of assault only requires that the defendant was not acting because of mistake or accident.

2006) (construing 18 U.S.C. § 113(a)(6)); *United States v. Bayes*, 210 F.3d 64, 68 (1st Cir. 2000); *United States v. Skeet*, 665 F.2d 983, 986 (9th Cir. 1982).

### (a)    First Element:  Offensive Touching

Here, the first element is satisfied because the foreman bumped or pushed the victim. Specifically, in the Statement of Facts which the defendant agreed was accurate, it states that "Defendant WILLIAM MICHAEL KING constructed a noose from nylon rope and, after an NFP foreman intentionally bumped or pushed CS towards defendant WILLIAM MICHAEL KING," . . . . Stmnt. of Facts ¶ 7.  Accordingly, this element has been proven by a preponderance of the evidence. *Bayes*, 210 F.3d at 68 ("The slightest willful offensive touching of another constitutes a battery regardless of whether the defendant harbors an intent to do physical harm.") (quoting *United States v. Williams*, 197 F.3d 1091, 1096 (11th Cir. 1999)).

### (b)    Second Element:  Mens Rea

As noted above, the Statement of Facts also makes clear that the foreman "intentionally bumped or pushed CS." Stmnt. of Facts ¶ 7.  Accordingly, the mens rea element is also satisfied by a preponderance of the evidence.

### (c)    Third Element:  Jurisdictional Element

Here, the third element is easily satisfied insofar as the foreman's actions took place within the special maritime and territorial jurisdiction of the United States.  The term "special maritime and territorial jurisdiction of the United States" includes "lands reserved or acquired for the use of the United States . . . ." 18 U.S.C. § 7(3).  The Pentagon and the surrounding land is a military reservation, and thus the crime was committed on "land reserved or acquired for use of the United States," and within the special maritime and territorial jurisdiction of the United

States. *United States v. Wright*, 985 F.2d 554, at *2 (4th Cir. 1993) ("The Pentagon is indisputably within the special jurisdiction of the United States.").

Accordingly, the United States has shown by a preponderance of the evidence that the foreman is a criminally responsible party and, therefore, that he was a "participant" in the defendant's crimes.

**2.      The foreman Was Also a Participant in the Civil Rights Crime**

Because the United States showed that the foreman was a participant in the Assault, it is not required to also demonstrate that the foreman was a participant in the Civil Rights charge. Nevertheless, the foreman was also a participant in that crime.

To show that the foreman was a participant in the violation of Section 245(b)(1)(B) the Court must find beyond a reasonable doubt four elements:

<u>First</u>       The foreman engaged in acts of force or threats of force;

<u>Second</u>   The foreman's acts of force or threats of force injured, intimidated, or interfered with a person;

<u>Third</u>     The foreman acted willfully and with the purpose of interfering with the victim's enjoyment of a benefit, service, privilege, program, facility, or activity provided or administered by the United States.

18 U.S.C. § 245(b)(1)(B); *Johnson v. Mississippi*, 421 U.S. 213, 224, 95 S. Ct. 1591, 1598, 44 L. Ed. 2d 121 (1975) ("Section 245(b) makes it a crime for any persons, by 'force or threat of force' to injure, intimidate, or interfere with any individual engaged in specified activities."); *United States v. Woodlee*, 136 F.3d 1399, 1405 (10th Cir. 1998) (listing the elements of a violation of 18 U.S.C. § 245(b)(2)(B)); *United States v. Pimentel*, 979 F.2d 282, 285 (2d Cir.

1992) (holding that a violation of 18 U.S.C. § 245(b)(1)(B) does not require the government to show that the defendant was motived by the victim's race); *United States v. Lane*, 883 F.2d 1484, 1495 (10th Cir. 1989) (listing the elements of a violation of 18 U.S.C. § 245(b)(2)(C)).

### (a) First Element: Acts of Force or Threats of Force

Here, as discussed above, the evidence is clear that the foreman used force on the victim insofar as he pushed or bumped CS. Stmnt. of Facts ¶ 7.

### (b) Second Element: Intimidation or Interference

Likewise, the foreman's acts interfered with the victim insofar as they caused CS to be moved toward the defendant and his noose, while the victim was working at the Pentagon. Stmnt. of Facts ¶ 7.

### (c) Third Element: Willfulness Intent to Interfere

To demonstrate willfulness, the United States must show that the subject acted with a purpose to deprive a person of a specific right or in reckless disregard of that right. Screws v. United States, 325 U.S. 91, 101, 105, 65 S. Ct. 1031, 1035, 1036, 89 L. Ed. 1495 (1945); United States v. Mohr, 318 F.3d 613, 619 (4th Cir. 2003).

Of course, a mens rea element "must almost always be proved by circumstantial evidence." *United States v. Santos*, 128 S. Ct. 2020, 2029, 170 L. Ed. 2d 912 (2008); *Staples v. United States*, 511 U.S. 600, 615 n.11, 114 S. Ct. 1793, 1802 n.11, 128 L. Ed. 2d 608 (1994) ("A defendant's knowledge can be, and usually is, "inferred from circumstantial evidence."); *United States v. Bolden*, 325 F.3d 471, 494 (4th Cir. 2003) (noting that knowledge is "'not measured by a psychic reading of the defendant's mind but by the surrounding facts and circumstances'") (quoting United States v. Larson, 581 F.2d 664, 667 (7th Cir. 1978)).

Circumstantial evidence shows that the foreman had the mens rea necessary to be a participant. As paragraph 11 of the PSR indicates,[4] the foreman was initially deceptive about his involvement in the crime, much like the defendant.[5] This deception is evidence of the foreman's willful commission of the offense. *United States v. Ryan*, 213 F.3d 347, 350-51 (7th Cir. 2000) (holding that a defendant's attempt to conceal her crime is circumstantial evidence of her intent at the time she committed the act). If the foreman did not have a culpable mental state, there was no need for him to make false exculpatory statements about his role. See PSR ¶ 11. The foreman's lies, therefore, demonstrate consciousness of guilt and are additional proof of his mens rea. *United States v. Glenn*, 312 F.3d 58, 69 (2d Cir. 2002) (holding that false exculpatory statements constitute "circumstantial evidence of consciousness of guilt and may strengthen inferences supplied by other pieces of evidence"); *United States v. Zandi*, 769 F.2d 229, 235 (4th Cir. 1985) (holding that mens rea may be inferred from the defendant's false exculpatory statements). Likewise, based on the defendant's statement that "this is what we do to coons where I come from," one could easily infer that the foreman had the same motivation as the defendant.

The evidence discussed above similarly shows the foreman's intent to interfere with the victim's enjoyment of benefits and privileges provided and administered by the United States. The victim was at his work site (a Department of Defense installation, on which CS was working)

---

[4] "In the absence of an affirmative showing that the facts related in the PSR are incorrect, the sentencing court is entitled to adopt its findings." *United States v. Viar*, 277 Fed. Appx. 266, 276 (4th Cir. 2008) (citing *United States v. Terry*, 916 F.2d 157, 162 (4th Cir.1990)).

[5] The defendant had convenient memory lapses as to whether he actually placed the noose around the victim's neck. Stmnt. of Facts ¶ 8.

when the incident occurred. His work there was a benefit, privilege, and program provided and/or administered by the United States. The foreman knew this and chose to attack CS at that time.

Accordingly, because the United States has shown that the foreman was a participant in both the Assault and the Civil Rights crime, U.S. Probation properly calculated the defendant's base offense level at 12.

**B.      U.S. Probation Correctly Increased the Offense Level 3 Levels Because the Defendant Intentionally Selected His Victim Because of the Victim's Race**

U.S. Probation correctly determined that the defendant's offense level should be increased by three levels under 3A1.1(a) insofar as the defendant intentionally selected his victim because of the victim's race. Incredibly, the defendant argues that the victim's race played no part in his crimes.

The defendant's specious claims are disproved by the context and very nature of his crime. For starters, there were two individuals at the scene of the crimes: the victim (who is an African-American man), and the foreman (who is white). The defendant chose to assault (with a noose) an African-American man rather than a white man even though each potential victim was similarly situated (except for their respective races). The only and obvious difference between the two potential victims was their race, and the defendant chose to assault the African-American man. The defendant's conscious decision to choose an African-American victim over a white victim unequivocally establishes beyond a reasonable doubt the applicability of § 3A1.1(a).

Second, the defendant took substantial time and effort methodically and deliberately to create a noose. After making the noose, the defendant then used it to carry out his assault, as he has admitted. As various courts have noted, the noose is a well-recognized tool of racist terrorism and a symbol of racism. "Like 'a slave-masters whip,' the image of a noose is 'deeply a part of

8

this country's collective consciousness and history, any further explanation of how one could infer a racial motive appears quite unnecessary.'" *Tademy v. Union Pacific Corp.*, 520 F.3d 1149, 1159 (10th Cir. 2008); *Vance v. S. Bell Tel. & Tel.*, 983 F.2d 1573, 1583 (11th Cir. 1993) (Fay, J., dissenting) ("The noose in the workplace context is a symbol not just of racial discrimination or of disapproval, but of terror. . . . [T]he noose in this context is intended to arouse fear."); *Williams v. New York City Housing Auth.*, 154 F. Supp.2d 820, 824 (S.D.N.Y. 2001) ("Indeed, the noose is among the most repugnant of all racist symbols, because it is itself an instrument of violence."); *Williams*, 154 F. Supp.2d at 825 ("The ... noose remains a potent and threatening symbol for African-Americans, in part because the grim specter of racially motivated violence continues to manifest itself in present day hate crimes.").

    The defendant could have used any number of other weapons or symbols. He deliberately chose a noose, however, which was no accident. By doing so, the defendant made clear his motivation: the victim's race and his hatred for African-Americans. The defendant's construction and employment of a noose, then, also demonstrates the applicability of § 3A1.1(a).

    If that were not enough, while assaulting the victim, the defendant stated: "This is what we do to coons where I come from." Stmnt. of Facts ¶ 7. This statement alone unequivocally demonstrates the defendant's racist motivation. Even the defendant's attorney does not deny that the term "coon" is a derogatory term for African-Americans. Furthermore, in the context of placing a noose around the neck of an African-American man, there is no plausible explanation for use of this racial epithet other than to offend and hurt the victim based on his race. By using this term in conjunction with the noose and his attack on an African-American man, the defendant clearly alluded to the evil of race-based lynchings. By making this statement, the defendant made

clear his racial hatred, his intent to violate the victim's civil rights, and the danger his views pose to other African Americans. Accordingly, no further evidence of the defendant's racial motivation is necessary to establish the applicability of § 3A1.1(a), and the U.S. Probation Officer correctly added three levels to the defendant's offense level.

C.     **Conclusion**

For the reasons stated herein, the sentencing range under the Guidelines properly is calculated to be 12 to 18 months of incarceration. This advisory range accounts for the factors that this Court considers in fashioning an appropriate sentence, including the nature and seriousness of the offense, the defendant's history, and the need to provide adequate deterrence and to protect the public. A sentence within the Guidelines range is appropriate and reasonable, and the United States therefore asks this Court to sentence the defendant to a term of imprisonment within that range.

                                  Respectfully Submitted,

                                  Dana J. Boente
                                United States Attorney

By:     \s\
                                Jonathan L. Fahey
                                Assistant United States Attorney
                                Michael J. Frank
                                Trial Attorney
                                U.S. Department of Justice
                                Civil Rights Division
                                Justin W. Williams U.S. Attorney's Building
                                2100 Jamieson Avenue
                                Alexandria, Virginia 22314

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on the July 9, 2009, I electronically filed the foregoing RESPONSE OF THE UNITED STATES TO DEFENDANT'S SENTENCING MEMORANDA with the Clerk of Court using the CM/ECF system, which will send an electronic copy to:

David Deitch, Esq.
Attorney for William King
1728 Massachusetts Avenue NW
Washington, D.C. 20036

\s\
Jonathan L. Fahey
Assistant United States Attorney
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3981
Email Address: jonathan.fahey@usdoj.gov